UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOHNNIE D. COOK,

        Plaintiff,

                                  **Civil Action 2:18-cv-1421**

       **v.**                          **Judge Sarah D. Morrison**

                                  **Chief Magistrate Judge Elizabeth P. Deavers**

MIKE DAVIS,

        Defendant.

**REPORT AND RECOMMENDATION**

      Plaintiff, Johnnie D. Cook, an Ohio inmate proceeding without the assistance of counsel, brings this civil rights action against Defendant Mike Davis, the Religious Services Administrator of the Ohio Department of Rehabilitation and Correction ("ODRC"), alleging that Davis denied his request for a religious accommodation to be served kosher meals in violation of the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). (ECF No. 3.) This matter is before the United States Magistrate Judge for a report and recommendation on Defendant's Motion for Summary Judgment (ECF No. 16) and Defendant's Motion to Dismiss for Failure to Prosecute (ECF No. 20). Plaintiff did not respond to the Motion for Summary Judgment despite two orders to do so. For the reasons that follow, it is **RECOMMENDED** that Defendant's Motion for Summary Judgment (ECF No. 16) be **GRANTED** and that, in the alternative, Defendant's Motion to Dismiss for Failure to Prosecute (ECF No. 20) be **GRANTED**.

1

# I.

At all times relevant to the allegations in his Complaint, Plaintiff was a prisoner housed at the Southern Ohio Correctional Facility ("SOCF").  (ECF No. 3 at 1.)  On June 14, 2019, the Court received notice that Plaintiff had been transferred to the Toledo Correctional Institution.  (ECF No. 12.)  Plaintiff alleges that Davis, the Religious Services Administrator for ODRC, denied his request for a religious accommodation to be served kosher meals, which has prevented him from being able to practice his religious beliefs.  (ECF No. 3 at 5.)  Plaintiff believes Davis so denied his request because he did not find that Plaintiff's beliefs were strongly held.  (*Id.*)  Plaintiff alleges that this rationale was not "reasonably related to any legitimate penological interest."  (*Id.*)  His claims allege violation of his constitutional rights under the First Amendment's right to religious freedom and violation of his statutory rights under RLUIPA.  (*Id.*)  He seeks damages and injunctive relief against Davis in his official capacity.  (*Id.* at 6.)  Defendant filed an Answer on January 7, 2019, in which he denies Plaintiff's allegations and raised various affirmative defenses.  (ECF No. 6.)

On December 23, 2019, Defendant moved for summary judgment on various grounds including that Plaintiff's request for a kosher meal accommodation was lawfully denied, that no substantial burden has been placed on Plaintiff's religious beliefs in violation of the First Amendment or of RLUIPA, that Plaintiff is not entitled to injunctive relief, that Davis is entitled to qualified immunity, and that the Eleventh Amendment bars Plaintiff's official capacity claims for money damages.  (ECF No. 16 at 9.)  Plaintiff failed to respond by the original due date of January 16, 2020, so the Court issued an order requiring a response by February 4, 2020, if he intended to respond.  (ECF No. 17.)  On February 3, 2020, Plaintiff filed a Motion for Leave to File an Untimely Memorandum in Opposition.  (ECF No. 18.)  For good cause shown, the Court

granted the Motion for Leave and gave Plaintiff until February 18, 2020, to file his Memorandum in Opposition to Defendant's Motion for Summary Judgment. (ECF No. 19.) As of the date of this Report and Recommendation, Plaintiff has not filed a Memorandum in Opposition.

## II.

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion"). "Once the moving party meets its initial burden, the nonmovant must 'designate specific facts showing that there is a genuine issue for trial.'" *Kimble v. Wasylyshyn*, 439 F. App'x 492, 495–96 (6th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record").

"When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stansberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23). When a motion for summary judgment is unopposed, the Court may properly

limit its review to the facts relied on by defendant.  It has no duty to search the record.  *Guarino v. Brookfield Twp.*, 980 F.2d 399, 404–05,407 (6th Cir. 1992).

### III.

Defendant has moved for summary judgment on both Plaintiff's First Amendment and RLUIPA claims.  (*See generally* ECF No. 16.)  As a preliminary matter, the Undersigned finds that the Eleventh Amendment precludes Plaintiff from recovering monetary damages against Defendant in his official capacity.  A claim asserted against a state actor in his or her official capacity is really a claim against the state.  *Rothhaupt v. Maiden*, 144 F. App'x 465, 471 (6th Cir. 2005).  The Eleventh Amendment of the United States Constitution operates as a bar to federal-court jurisdiction when a private citizen sues a state or its instrumentalities unless the state has given express consent.  *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1983); *Lawson v. Shelby Cnty.*, 211 F.3d 331, 334 (6th Cir. 2000).  Because Ohio has not waived its sovereign immunity in federal court, it is entitled to Eleventh Amendment immunity from suit for monetary damages.  *Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999).  Accordingly, Plaintiff's claims for monetary damages against Defendant in his official capacity fail as barred by the Eleventh Amendment.

Similarly, the Undersigned finds that Plaintiff's claims for monetary damages under the RLUIPA fail to state a claim for which relief may be granted.  As the Sixth Circuit has held, awarding "individual-capacity, money-damages . . . [under] RLUIPA [is] inappropriate."  *Haight v. Thompson*, 763 F.3d 554, 570 (6th Cir. 2014) ("We have considerable company in reaching this conclusion.  Every circuit to consider the question . . . has held that RLUIPA does not permit money damages against state prison officials, even when the lawsuit targets the defendants in their individual capacities.").

4

The Undersigned finds, therefore, that Plaintiff's claims for monetary relief against Defendant in his official capacity and his claims for monetary relief in any capacity under the RLUIPA should be dismissed pursuant to 28 U.S.C. § 1915(e). *In re Prison Litig. Reform Act*, 105 F.3d 1131, 1134 (6th Cir. 1997) ("Section 1915(e)(2) is applicable throughout the entire litigation process. Thus, a case that may not appear to initially meet § 1915(e)(2) may be dismissed at a future date should it become apparent that the case satisfies this section."). The Undersigned will now consider the merits of Plaintiff's First Amendment and RLUIPA claims for injunctive relief.

**A.  First Amendment Free Exercise Claim**

The First Amendment, made applicable to the states through the Fourteenth Amendment, provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. "Prisoners retain the First Amendment right to the free exercise of their religion." *Hayes v. Tennessee*, 424 F. App'x 546, 549 (6th Cir. 2011). "Under § 1983, a prisoner alleging that the actions of prison officials violate his religious beliefs must show that the belief or practice asserted is religious in the person's own scheme of things and is sincerely held." *Barhite v. Caruso*, 377 F. App'x 508, 511 (6th Cir. 2010) (citation and internal quotation marks omitted). The prisoner must also show that the prison's action substantially burdens his sincerely held religious beliefs. *Id.* "An action of a prison official will be classified as a substantial burden when that action forced an individual to choose between following the precepts of his religion and forfeiting benefits or when the action in question placed substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Hayes*, 424 F. App'x at 555 (internal quotation marks and citations omitted). Under § 1983, if the action substantially burdens a prisoner's sincerely held beliefs, the action "is valid if it is

'reasonably related to legitimate penological interests.'"  *Colvin v. Caruso*, 605 F.3d 282, 296

(6th Cir. 2010) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).  Defendant moves for

summary judgment on Plaintiff's First Amendment claim for two reasons:  first, he asserts that

Plaintiff does not have a sincerely held belief in the Jewish faith; second, he asserts that, even if

Plaintiff's Jewish beliefs are sincerely held, Defendant's actions were reasonable.

<u>Sincerely Held Belief</u>

In order to succeed on his free exercise claim, Plaintiff must show that his beliefs "are

sincerely held and whether they are, in his own scheme of things, religious."  *United States v. Seeger*,

380 U.S. 163, 185 (1965); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (citing

*Kent v. Johnson*, 821 F.2d 1220, 1224 (6th Cir.1987) ("A prisoner alleging that the actions of prison

officials violate his religious beliefs must show that the belief or practice asserted is religious in the

person's own scheme of things and is sincerely held.").  As the Sixth Circuit has recognized,

"[p]rison officials have a legitimate penological interest not only in controlling the cost of the kosher

meal program and ensuring that only those with sincere beliefs participate in the program, but also in

maintaining discipline within the prison."  *See Berryman v. Granholm*, 343 F. App'x 1, 6 (6th Cir.

2009).

The record reveals that Plaintiff's belief in Judaism is not sincerely held.  On May 27,

2014, Plaintiff requested to change his religious affiliation from Christian to Rastafarian, and on

December 27, 2016, he submitted a Request for Religious Accommodation requesting vegan

meals as a practicing Rastafarian.  (ECF Nos. 16-4, 16-5.)  On December 16, 2017, Plaintiff

changed his religious affiliation from Rastafarian to Jewish, and on February 9, 2018, he

submitted a request for religious accommodation to receive kosher meals.  (ECF Nos. 16-8.)  In

this request, he stated that he had been practicing the Jewish faith for one year and that he had a

6

bar mitzvah on December 10, 2017.  (*Id.*)  That is, he waited a full year to request a kosher meal accommodation after changing his religious identification for the second time.

Moreover, the record reflect that Plaintiff consistently purchased non-kosher items from the commissary as evidenced by an affidavit submitted by Sherry Distel, the Commissary Manager at Southern Ohio Correctional Facility (ECF No. 16-10), commissary records from January 13, 2016, through May 13, 2019 (ECF No. 16-13), and a chart showing Plaintiff's food items purchased between March 2018 and October 2019 (ECF No. 16-12).  Importantly, Plaintiff continued so purchasing well after he initiated this lawsuit on November 26, 2018.  The Undersigned finds that the record contains uncontroverted evidence supporting Defendant's contention that Plaintiff's Jewish belief is insincere.

<u>Reasonableness</u>

Even assuming Plaintiff's belief in Judaism is sincerely held, his claim fails because Defendant's actions were reasonable.  In *Turner v. Safley*, the United States Supreme Court held that four factors are relevant in balancing the deference owed to prison policies designed to maintain security and discipline with the important need to protect inmates' constitutional rights. 482 U.S. 78, 85-89 (1987).  The four factors are as follows:

(1)  whether the regulation has a "valid, rational connection" to a legitimate governmental interest;

(2)  whether alternative means are open to inmates to exercise the asserted right;

(3)  what impact an accommodation of the right would have on guards and inmates and prison resources; and

(4)  whether there are "ready alternatives" to the regulation.

*Id.* at 89–91.  If the first factor is not present, the regulation is unconstitutional, and the other factors do not matter.  *Spies v. Voinovich*, 173 F.3d 398, 403 (6th Cir. 1999); *Muhammad v.*

*Pitcher*, 35 F.3d 1081, 1084 (6th Cir. 1994).  The remaining factors are considerations that must be balanced together.  *Spies*, 173 F.3d at 403 (quoting *Turner*, 482 U.S. at 90–91).

Under the first *Turner* factor, Defendant's conduct was reasonable only if the denial of Plaintiff's kosher meal accommodation was for a legitimate penological reason.  Defendant's sworn affidavit, attached to his Motion for Summary Judgment as Exhibit 3, states that he denied Plaintiff's request for a kosher meal accommodation because, after reviewing all evidence, he was "unable to determine the extent to which his request reflect[ed] a strongly held religious belief in the Jewish faith."  (ECF No. 16-3 at ¶ 15.)  Defendant states that Plaintiff's responses on the accommodation questionnaire and in his requests to change religious affiliations "indicated to me that he knew very, very little about the Jewish faith nor the reasons that members of this faith adhere to a kosher diet."  (*Id.* at ¶ 16.)

The Sixth Circuit Court of Appeals has held that "[p]rison officials have a legitimate penological interest not only in controlling the cost of the kosher meal program and ensuring that only those with sincere beliefs participate in the program, but also in maintaining discipline within the prison."  *Berryman v. Granholm*, 343 F. App'x 1, 4 (6th Cir. 2009) (holding that defendant reasonably removed plaintiff from the kosher meal program because plaintiff "ordered," "signed for," and "held [in] his lap" non-kosher food items) (citing *Russell v. Wilkinson*, 79 F. App'x 175, 177 (6th Cir. 2003) (concluding that, in light of a prisoner's "obvious actions in not observing the kosher food requirements outside meals," the prison had a legitimate penological interest in removing the prisoner from the program because of the need to maintain discipline in the facility)).

The Undersigned therefore finds that Defendant's denial of Plaintiff's religious accommodation request for kosher meals had a valid connection to the legitimate penological

interest of ensuring that only those with sincerely held religious beliefs participate in the program and in controlling the cost of the kosher meal program. *Berryman*, 343 F. App'x at 4. Accordingly, the Undersigned finds in favor of Defendant on this factor.

The three remaining *Turner* factors, considered together, also weigh in Defendant's favor. Plaintiff can self-monitor his food choices in order to maintain a kosher diet through his meal selections and his purchases at the commissary. He may also re-apply for the religious accommodation at a later time if he wishes for Defendant to reconsider. Moreover, approving his accommodation could set a bad precedent and, if so, could impose an unwarranted financial burden on the prison's budget. The final factor only applies where "an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological interests." *Turner*, 482 U.S. at 91. The evidence does not show that Plaintiff has made such a showing here.

Accordingly, Defendant's actions were reasonable under the *Turner* test. It is therefore **RECOMMENDED** that summary judgment be granted on Plaintiff's First Amendment claim.

### B. RLUIPA Claim

Under RLUIPA, a government may not impose a "substantial burden on the religious exercise" of an inmate, unless the government demonstrates that imposition of such burden "is in furtherance of a compelling governmental interest" and "is the least restrictive means" of furthering that interest. 42 U.S.C. § 2000cc-1(a). The purpose of RLUIPA is to "protect[] institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent upon the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). In determining whether a practice is the "least restrictive means" of furthering a compelling government interest related to the incarceration of

prisoners, a court must give due deference to the judgment of prison officials as to the safety concerns implicated by prison regulations. *Hoevenaar v. Lazaroff*, 422 F.3d 366, 370 (6th Cir. 2005). RLUIPA does not "elevate accommodation of religious observances over an institution's need to maintain order and safety." *Cutter*, 544 U.S. at 722.

The phrase "substantial burden" is not defined in the statute, but courts have held that it must be an "exceptional" burden. *Id.* at 720; *see Livingston Christian Schools v. Genoa Charter Township*, 858 F.3d 996, 1003 (6th Cir. 2017) (explaining that "not just any imposition on religious exercise will constitute a violation of RLUIPA" and that instead, "a burden must have some degree of severity to be considered 'substantial.'"); *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x. 729, 736 (6th Cir.2007) ("[A] 'substantial burden' [under the RLUIPA] is a difficult threshold to cross").

The United States District Court for the Eastern District of Michigan held that "[i]f an inmate chooses to purchase and consume non-kosher snacks, he cannot show that . . . denying kosher meals to him constitutes a substantial burden on his ability to practice the tenants of his faith." The Undersigned agrees and finds that Plaintiff has not shown that his ability to practice his faith has been substantially burdened by the denial of his kosher meal accommodation request. Moreover, as explained above, Defendant has a legitimate penological interest in ensuring that only those inmates with a sincerely held belief in the Jewish faith are approved to receive a kosher meal accommodation. It is therefore **RECOMMENDED** that summary judgment be granted to Defendant on Plaintiff's claim under RLUIPA.

### C.  Qualified Immunity

Generally speaking, in Section 1983 cases, government officials performing discretionary functions are immune from liability so long as their conduct "does not violate clearly established

statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The burden is on Plaintiff to demonstrate that an official is not entitled to qualified immunity. *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006) (citing *Barrett v. Steubenville City Schs.*, 388 F.3d 967, 970 (6th Cir. 2004)). When evaluating a qualified immunity defense as a basis for summary judgment, the Court must examine two prongs (in either order): (1) whether the facts, taken in the light most favorable to Plaintiff, show that the defendant's conduct violated a constitutional right and (2) whether the constitutional right alleged to have been violated was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling *Katz* to the extent that *Katz* required the prongs to be analyzed in order).

As explained above, Defendant's denial of Plaintiff's request for a kosher meal accommodation passed constitutional muster in light of the compelling government interest in maintaining discipline and security. Accordingly, the Undersigned finds that even if Plaintiff's First Amendment and RLUIPA claims were valid, Defendant is immune from liability for denying Plaintiff's accommodation request, as the denial was a discretionary function of Defendant's job and the denial did not constitute a violation of a clearly established statutory or constitutional right. *Harlow*, 457 U.S. at 818.

### D. Defendant's Motion to Dismiss for Failure to Prosecute

On May 21, 2020, Defendant filed a Motion to Dismiss for Failure to Prosecute. (ECF No. 20.) In support of the Motion, Defendant notes that Plaintiff has failed to submit any evidence outside of his initial Complaint and that he failed to respond to Defendant's Motion for Summary Judgment. (*Id.*)

11

In the alternative of summary judgment being granted in Defendant's favor, it is

**RECOMMENDED** that Plaintiff's action be dismissed pursuant to Rule 41(b). The Court's

inherent authority to dismiss a plaintiff's action with prejudice because of his failure to prosecute

is expressly recognized in Rule 41(b), which provides in pertinent part: "If the plaintiff fails to

prosecute or comply with these rules or a court order, a defendant may move to dismiss the

action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this

subdivision (b) . . . operates as an adjudication on the merits." Fed. R. Civ. P. 41(b); *Link v.*

*Walbash R.R. Co.*, 370 U.S. 626, 629–31 (1962). "This measure is available to the district court

as a tool to effect management of its docket and avoidance of unnecessary burdens on the tax-

supported courts and opposing parties." *Knoll v. AT & T*, 176 F.3d 359, 363 (6th Cir. 1999).

The Sixth Circuit directs the district courts to consider the following four factors in

deciding whether to dismiss an action for failure to prosecute under Rule 41(b):

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the
> adversary was prejudiced by the dismissed party's conduct; (3) whether the
> dismissed party was warned that failure to cooperate could lead to dismissal; and
> (4) whether less drastic sanctions were imposed or considered before dismissal was
> ordered.

*Schafer v. City of Defiance Police Dept.*, 529 F.3d 731, 737 (6th Cir. 2008) (citing *Knoll*, 176

F.3d at 363). "'Although typically none of the factors is outcome dispositive, . . . a case is

properly dismissed by the district court where there is a clear record of delay or contumacious

conduct.'" *Schafer*, 529 F.3d at 737 (quoting *Knoll*, 176 F.3d at 363).

Here, Plaintiff initiated this action on October 29, 2018, with the filing of a Motion for

Leave to Proceed *in forma pauperis*. (ECF No. 1.) Since the time that Motion was granted and

Plaintiff's Complaint accordingly filed on the docket on November 26, 2018, Plaintiff has not

submitted any substantive filing or evidence. Additionally, Plaintiff failed to respond to

12

Defendant's Motion for Summary Judgment despite two Orders to do so.  (ECF Nos. 16, 17, 19.)
The Undersigned therefore finds that, in the alternative of the granting of summary judgment in
Defendant's favor, the Court should dismiss this action for failure to prosecute under Rule 41(b).

## IV.

For the reasons set forth above, it is **RECOMMENDED** that Defendant's Motion for
Summary Judgment (ECF No. 16) be **GRANTED** and, in the alternative, that Defendant's
Motion to Dismiss for Failure to Prosecute (ECF No. 20) be **GRANTED**.

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that
party may, within fourteen (14) days, file and serve on all parties objections to the Report and
Recommendation, specifically designating this Report and Recommendation, and the part in
question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).
Response to objections must be filed within fourteen (14) days after being served with a copy.
Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and
Recommendation will result in a waiver of the right to *de novo* review by the District Judge and
waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex
Prod. Co.*, 517 F.3d 816*,* 829 (6th Cir. 2007) (holding that "failure to object to the magistrate
judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district
court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that
defendant waived appeal of district court's denial of pretrial motion by failing to timely object to
magistrate judge's report and recommendation).  Even when timely objections are filed,
appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d

981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: June 5, 2020                         _____*/s/ Elizabeth A. Preston Deavers*_____
                                          ELIZABETH A. PRESTON DEAVERS
                                          CHIEF UNITED STATES MAGISTRATE JUDGE